# In the United States Court of Appeals for the Eleventh Circuit

SHERRY WOOD,

*Plaintiff-Appellant,*

*v.*

SHELBY COUNTY BOARD OF EDUCATION
and DR. LEWIS BROOKS,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Alabama
N.D. Ala. Case No. 2:24-cv-112 (Haikala, J.)

## BRIEF FOR APPELLANT

Stephen K. Wirth
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave., NW, Suite 301
Washington, DC 20016
(301) 615-2336
stephen@jacobsonlawyersgroup.com

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff respectfully submits that oral argument will aid the Court in the proper resolution of this appeal, which presents an issue of national importance affecting the rights of U.S. military servicemembers and veterans, and which is the subject of a split of authorities among the federal and state courts.

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT ........................................i

TABLE OF AUTHORITIES ....................................................... iii

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUE.......................................................1

STATEMENT OF THE CASE .......................................................2

    A.   Legal Background...........................................................3

    B.   Allegations in the Complaint .............................................6

    C.   Proceedings Below.........................................................8

SUMMARY OF ARGUMENT.......................................................10

STANDARD OF REVIEW .........................................................12

ARGUMENT: APPELLANT HAS STATED A USERRA CLAIM.............13

    A.   The Board's Veteran-Compensation Policy Is a "Benefit of Employment"..................................................13

    B.   Denial of a Veteran-Only Benefit to a Qualifying Veteran Is a Denial "on the Basis of" Military Service ...........................26

CONCLUSION....................................................................38

CERTIFICATE OF COMPLIANCE ................................................39

CERTIFICATE OF SERVICE.......................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Adams v. Dep't of Homeland Sec.,*
   3 F.4th 1375 (2021) ...........................................................22, 31, 32 37

*Belaustegui v. Int'l Longshore & Warehouse Union,*
   36 F.4th 919 (2022) ..........................................................9, 15, 32, 37

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................12

*Bhd. of R.R. Trainmen v. B&O R.R.,*
   331 U.S. 519 (1947) ........................................................................18

*Bostock v. Clayton County,*
   590 U.S. 644 (2020) ...........................................17, 18, 27, 28, 29

*Butterbaugh v. Dep't of Justice;*
   336 F.3d 1332 (Fed. Cir. 2003) ..............................................22, 30

*Chaparro v. Carnival Corp.,*
   693 F.3d 1333 (11th Cir. 2012)......................................................12

*Cinotto v. Delta Air Lines Inc.,*
   674 F.3d 1285 (11th Cir. 2012)......................................................12

*Clarkson v. Alaska Airlines, Inc.,*
   59 F.4th 424 (9th Cir. 2023) ..........................................................25

*Crews v. City of Mount Vernon,*
   567 F.3d 860 (2009).........................................................8, 17, 33, 37

*Digital Realty Tr., Inc. v. Somers,*
   583 U.S. 149 (2018).........................................................................15

*Feliciano v. Dep't of Transp.,*
   605 U.S. 38 (2025) ...................................................................22, 32

*Fishgold v. Sullivan Drydock & Repair Corp.,*
   328 U.S. 275 (1946) ........................................................................25

*Gummo v. Village of Depew,*
  75 F.3d 98 (2d Cir. 1996) ...................................................27

*Huhmann v. Fed. Express Corp.,*
  874 F.3d 1102 (9th Cir. 2017)...........................................15

*Koehler v. PepsiAmericas,*
  No. 1:04-cv-742, 2006 WL 2035650 (S.D. Ohio July 18, 2006) .......................33

*Koehler v. PepsiAmericas,*
  268 Fed. App'x 396 (6th Cir. 2008) ...........................................15, 33

*Lorillard v. Pons,*
  434 U.S. 575 (1978) ...................................................23

*Maxfield v. Cintas Corp. No. 2,*
  427 F.3d 544 (8th Cir. 2005)...........................................15

*Michel v. NYP Holdings, Inc.,*
  816 F.3d 686 (11th Cir. 2016)...........................................6

*Myrick v. City of Hoover,*
  69 F.4th 1309 (11th Cir. 2023) ...........................................25, 29, 38

*Philip C. v. Jefferson Cnty. Bd. of Educ.,*
  701 F.3d 691 (11th Cir. 2012)...........................................23

*Pucilowski v. DOJ,*
  498 F. 3d 1341 (Fed. Cir. 2007) ...........................................25

*Rotkiske v. Klemm,*
  589 U.S. 8 (2019) ...................................................17

*Rudisill v. McDonough,*
  601 U.S. 294 (2024) ...................................................25

*Travers v. Fed. Express Corp.,*
  8 F.4th 198 (3d Cir. 2021) ...................................................25

*United States v. Gonzales,*
  520 U.S. 1 (1997) ...................................................14, 16

*Yates v. MSPB,*
145 F.3d 1480 (Fed. Cir. 1998) ........................................................26

**Merit System Protection Board Decisions**

*Collins v. Dep't of Agric.,*
104 M.S.P.R. 76 (M.S.P.B. 2006) .............................................22, 34

*Feliciano v. Dep't of Transp.,*
No. AT-4324-18-0287-I-4, 2021 WL 4033810 (M.S.P.B. Sept. 6, 2021) ...23, 32

*Santiago v. Dep't of Veterans Affs.,*
No. DC-4324-20-0796-I-1, 2023 WL 5250208
(M.S.P.B. Aug. 15, 2023) ...........................................................22, 34

*Welshans v. USPS,*
107 M.S.P.R. 110 (M.S.P.B. 2007) ...................................................23

**Statutes**

5 U.S.C.
§ 5538 ................................................21, 22, 23, 24, 31, 34, 35
§ 6323(a) .............................................................................21, 30
§ 7703 ......................................................................................6, 37

10 U.S.C.
§ 101(a)(13)(B) ...........................................................................31
§ 12304b) ....................................................................................23

26 U.S.C.
§ 79(d)(2) .....................................................................................20
§ 105(h)(2) ...................................................................................20
§ 129(d) ........................................................................................20
§ 132(j) .........................................................................................20

28 U.S.C.
§ 1291 ............................................................................................1
§ 1295(a)(9) ...............................................................................6, 37
§ 1331 ............................................................................................1

29 U.S.C. § 206(d)(1) ......................................................................19

38 U.S.C.

§ 4301 ...............................................................2, 4, 35, 36
§ 4303(2) ....................................................................*passim*
§ 4311 .........................................................................*passim*
§ 4311(a) ....................................................................*passim*
§ 4311(c) ....................................................................26, 29
§ 4312 ................................................................................20
§ 4313 ................................................................................20
§ 4314 ................................................................................20
§ 4315 ................................................................................20
§ 4316 ................................................................................20
§ 4317 ................................................................................20
§ 4318 ................................................................................20
§ 4322 ..................................................................................6
§ 4323 ....................................................................1, 5, 6, 21
§ 4324 .............................................................................6, 37

42 U.S.C.

§ 1981a ..............................................................................29
§ 2000e(k) .........................................................................20
§ 2000e-2(a)(1) .................................................................18

1968 Amendments to the Universal Military Training and Service Act,
  Pub. L. No. 90-491, 82 Stat. 790 ...............................................4

Equal Pay Act of 1963, Pub. L. No. 88-38, 77 Stat. 56 ......................19

John S. McCain National Defense Authorization Act for Fiscal Year 2019,
  Pub. L. No. 115-232, div. A, tit. VI, § 605, 132 Stat. 1795 (2018) ..................23

Selective Training and Service Act of 1940, Pub. L. No. 76-783,
  54 Stat. 885 .........................................................................4

Servicemember Quality of Life Improvement and National Defense
  Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, div. A,
  tit. XI, 138 Stat. 2089 (2024) .................................................23

Pregnancy Discrimination Act of 1978, Pub. L. No. 95-555, 92 Stat. 2076 .....19

Uniformed Services Employment and Reemployment
  Rights Act of 1994, Pub. L. No. 103-353, 108 Stat. 3149 ...................... *passim*

Veterans' Benefits Act of 2010, Pub. L. No. 111-275, § 701(a),
  124 Stat. 2887 ...........................................................................................14

Vietnam Era Veterans' Readjustment Assistance Act of 1974,
  Pub. L. No. 93-508, 88 Stat. 1578 .........................................................4

**Rules**

Federal Rules of Civil Procedure
  Rule 12(b)(6) ...............................................................................................8
  Rule 59 ...................................................................................................1, 9
  Rule 60 ...................................................................................................1, 9

**Other Authorities**

Congressional Record ......................................................................4, 14

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of
  Legal Texts* (2012) ..............................................................................17

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant invoked the district court's jurisdiction under 28 U.S.C. § 1331 and 38 U.S.C. § 4323.

On March 25, 2025, the U.S. District Court for the Northern District of Alabama issued a Memorandum Opinion and Order dismissing the complaint in its entirety. Doc. 11.[1] On April 8, Plaintiff-Appellant moved for relief under Rules 59 and 60 of the Federal Rules of Civil Procedure. Doc. 12. On August 25, Plaintiff-Appellant filed a notice of appeal. Doc. 14. On August 26, the district court denied Plaintiff-Appellant's motion for reconsideration. Doc. 15. On August 27, Plaintiff-Appellant filed an amended notice of appeal. Doc. 18.

This Court's appellate jurisdiction rests on 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUE

Section 4311(a) of Title 38 of the U.S. Code provides, in relevant part, that a military servicemember "shall not be denied … any benefit of employment by an employer on the basis of" her military service.

The issue presented on appeal is whether a veteran can state a claim under § 4311(a) when an employer withholds from her a benefit—here, a four-step salary increase—that is expressly conditioned on military service.

---

[1] Citations the district court docket below are in the form "Doc. #."

## STATEMENT OF THE CASE

Plaintiff-Appellant Sherry Wood is a retired teacher and military veteran. For a decade, she was employed as a full-time teacher by Defendant-Appellee, the Shelby County Board of Education ("the Board"). During that period, the Board had in place a veteran-compensation policy promising a step-up in salary for each year of qualifying active-duty military service. Ms. Wood met the policy's criteria, yet the Board did not credit her service and paid her substantially less than it paid other similarly situated veterans.

The Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), Pub. L. No. 103-353, 108 Stat. 3149 (codified as amended at 38 U.S.C. § 4301 *et seq.*), forbids employers from denying "any benefit of employment" to a servicemember "on the basis of" her "membership" in the uniformed services. 38 U.S.C. § 4311(a). The Board's veteran-compensation policy is such a benefit: it is an employer policy that confers enhanced wages on the basis of military service. Decades of decisions interpreting USERRA and its predecessors—by the Federal Circuit, the Merit Systems Protection Board, and other courts—treat all manner of military-only benefits as enforceable "benefits of employment" under § 4311(a). Nothing in the statute's text, structure, or history excludes veteran-only benefits from that protection.

The district court nevertheless dismissed Ms. Wood's complaint, holding that § 4311(a) does not reach the denial of a military-only benefit, like the Board's step up in salary for military veterans. That ruling misinterprets USERRA's text and structure, and it conflicts with a substantial body of precedent treating military-only benefits as enforceable entitlements under § 4311(a). If affirmed, the decision would render many veteran-only benefits effectively unenforceable and, by splitting with the Federal Circuit, it would leave privately employed veterans in this Circuit with weaker protections than federal employees, whose employment claims are governed by Federal Circuit precedent. Under the proper reading of USERRA, Ms. Wood's allegations— that the Board had a military-only wage enhancement policy, that she qualified, and that the Board refused to credit her years of service under its policy—state a straightforward claim under § 4311(a). The district court's judgment therefore should be reversed.

## A.    Legal Background

Because supporting and protecting veterans as they return from duty is critical to ensuring the Nation's ability to raise and support armies and otherwise wage war effectively, Congress has, for nearly a century, expanded protections for veterans entering (or re-entering) the workforce. *See, e.g.,*

Selective Training and Service Act of 1940, Pub. L. No. 76-783, 54 Stat. 885; 1968 Amendments to the Universal Military Training and Service Act, Pub. L. No. 90-491, 82 Stat. 790; Vietnam Era Veterans' Readjustment Assistance Act of 1974, Pub. L. No. 93-508, 88 Stat. 1578; USERRA, Pub. L. 103-353, 108 Stat. 3149. Congress intended those protections "to compensate for the disruption of careers and the financial setback that military service meant for many veterans," 140 Cong. Rec. 14,408 (June 27, 1994) (statement of Sen. Rockefeller), and "to encourage service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a)(1).

Congress enacted USERRA, on that background, to "clarify and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." 137 Cong. Rec. 10,701–03 (May 14, 1991) (statement of Rep. Penny); *see* 137 Cong. Rec. 11,313–16 (May 16, 1991) (statement of Sen. Cranston). To that end, USERRA establishes broad substantive protections for servicemembers. It guarantees eligible servicemembers the right to reemployment after service and restoration of the seniority, status, pay, and benefits they would have attained but for their service. *Id.* §§ 4312–13, 4316, 4318. And it prohibits employers from denying "initial employment,

reemployment, retention in employment, promotion, or any benefit of employment … on the basis of" military service. *Id.* § 4311(a).

USERRA expressly defines "benefit of employment" broadly to include the "terms, conditions, or privileges of employment," and "any advantage, profit, privilege, gain, status, account, or interest … that accrues by reason of" an employment contract or employer policy—expressly reaching things like pension and health benefits, bonuses, severance, supplemental unemployment benefits, vacations, and even the opportunity to select work hours or work location. 38 U.S.C. § 4303(2). Nothing in this definition—or any other provision of USERRA—excludes benefits of employment that are available exclusively to military service members.

USERRA also creates several judicial and administrative avenues for enforcing these substantive rights. Claims against private employers and political subdivisions of a State (like county school boards) may be brought in federal district court. *See id.* § 4323(a)(1)–(3), (b)(3), (c)(2), (i). And claims against a State may be brought by the individual servicemember in state court or by the United States in federal district court. *Id.* § 4323(a)(1), (b)(1)–(2). Claims against the federal government, by contrast, must be brought in the first instance before the Merit Systems Protection Board (MSPB). *Id.*

§ 4324(a)–(c). And judicial review of the MSPB's decisions lies exclusively in the U.S. Court of Appeals for the Federal Circuit, which hears petitions for review under USERRA, 38 U.S.C. § 4324(d)(1), and 5 U.S.C. § 7703. *See* 28 U.S.C. § 1295(a)(9).[2]

### B.    Allegations in the Complaint

The following facts, alleged in the complaint, "must be accepted as true and construed in the light most favorable to the plaintiff." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016).

Sherry Wood is a retired teacher and military veteran. Doc. 1 ("Compl."), ¶¶ 9, 13. From 2004 to 2014, she worked as a full-time teacher for the Shelby County Board of Education. *Id.* Under the Board's policies and procedures in place during her employment, all Board employees were entitled to a step up in salary for each year of active, full-time military experience they had.[3] *Id.* ¶ 15. When Ms. Wood was hired in 2004, the Board

---

[2] Additionally, any servicemember may file an administrative complaint with the Department of Labor's Veterans' Employment and Training Service, which investigates claims and can refer meritorious cases to the Attorney General or the Department's Office of Special Counsel. *See* 38 U.S.C. § 4322.

[3] The Board's current policy, which is substantively identical to the policy alleged in the complaint, is set forth in the Board's employee handbook. *See* Shelby County Schools, *Shelby County Employee Handbook 2025-2026*, *available at* https://www.shelbyed.k12.al.us/o/scs/page/employee-handbook

was aware of her military experience, yet the Board did not credit Ms. Wood's years of service under its policy and did not provide her the four-step increase in salary to which she was entitled. *Id.* ¶¶ 13–15. The Board never corrected this error during the decade Ms. Wood worked for the school system, which caused her to earn substantially less in income and associated benefits, including retirement benefits, than she should have earned. *Id.* ¶¶ 20–21. During the same period, the Board granted other eligible veterans a step up in pay for their military service pursuant to the policy. *Id.* ¶¶ 24–25.

Ms. Wood first learned of the Board's veteran-compensation policy in March 2023, at which point she contacted the Board and asserted her entitlement to the four-step increase in salary. *Id.* ¶¶ 16–17. Ms. Wood was told by a Board employee that, based on her military service, she should have received the four-step increase at the time she was hired. *Id.* ¶ 18. Yet the Board has continued to refuse to correct the error, to pay Ms. Wood the back pay she is owed, or otherwise to make her whole. *Id.* ¶ 19.

---

(*archived at* https://perma.cc/Z64E-6TKE) ("Placement on the teacher salary schedule is determined by the number of full years of public education or accredited private school teaching experience and up to four years of active, full-time military experience.").

## C.    Proceedings Below

Ms. Wood brought this action under USERRA against the Board and its superintendent in his official capacity.[4] Compl. ¶¶ 5–7. The complaint alleges that the Board unlawfully denied Ms. Wood a "benefit of employment" under USERRA, 38 U.S.C. § 4311(a), when the Board failed to give her the four-step increase in salary to which she was entitled for her full-time military experience. *Id.* ¶¶ 22–30. The complaint seeks, *inter alia*, monetary damages for backpay and associated benefits, as well as statutory attorney's fees and costs. *Id.* at 6–7.

The Board moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 4. The district court granted the motion. Doc. 11 ("MTD Op."). Relying on the Seventh Circuit's decision in *Crews v. City of Mount Vernon*, 567 F.3d 860 (2009), the court held that "[a]n employer's decision to discontinue benefits provided only to military service members does not violate [USERRA]." MTD Op. at 7. That is because, the district court held, "[t]he withholding of a perk available to an employee based on her military service does not amount to discrimination prohibited by § 4311(a)." *Id.* Instead, the court reasoned, "to

---

[4] The Board and its superintendent are treated collectively in this brief.

state a [USERRA] claim in this case under § 4311(a), Ms. Wood would have to allege that the Board paid non-military teachers more than teachers who served in reserve units because of the military teachers' status as service members." *Id.* The court thus concluded that "[t]he Board's alleged failure to treat Ms. Wood similarly to other service member employees does not give rise to a [USERRA] claim for discrimination in the terms of employment under § 4311(a)." *Id.* at 8.

Ms. Wood moved for relief under Rules 59 and 60 of the Federal Rules of Civil Procedure. Doc. 12. The district court denied Ms. Wood's motion, reiterating that "because Ms. Wood does not allege that the Board failed to provide her a benefit that was available to her non-military colleagues, she cannot assert a claim for discrimination in employment benefits under [USERRA]." Doc. 15 ("Recon. Order") at 1–2. The court reaffirmed its reliance on the Seventh Circuit's decision in *Crews* and "decline[d] … to substitute an analysis that relies on the Ninth Circuit's … decision" in *Belaustegui v. International Longshore & Warehouse Union*, 36 F.4th 919 (2022), in which the Ninth Circuit held that plaintiffs may assert USERRA claims based on the denial of military-only benefits.

This appeal followed.

# SUMMARY OF ARGUMENT

USERRA forbids employers from denying "any benefit of employment" to a servicemember "on the basis of" her military service. The Board adopted a policy promising up to a four-step salary increase to employees with qualifying military service, yet denied Ms. Wood the four-step enhancement to which she was entitled and that other veterans received. The district court dismissed her claim on the theory that § 4311(a) protects only benefits provided to both veterans and non-veterans and that she had to allege the Board paid non-military teachers more than she was. That reading cannot be squared with the statute's text, structure, history, or precedent.

*First*, the Board's veteran-compensation policy is a protected "benefit of employment" under USERRA: It is an employer "policy" that confers an "advantage," "gain," and higher "salary for work performed" by reason of military service. 38 U.S.C. § 4303(2). Nothing in USERRA carves out benefits available only to veterans. To the contrary, USERRA's broad definition of "benefit of employment," its remedial purpose to eliminate disadvantages flowing from military service, and decades of Federal Circuit, MSPB, and other appellate decisions all treat statutory, regulatory, collectively bargained, and voluntary employer military-only benefits as protected "benefits of

employment" enforceable under § 4311(a). At a minimum, the pro-veteran canon requires construing USERRA to include such military-only benefits.

*Second*, by refusing to credit Ms. Wood's years of military service under its policy, the Board denied Ms. Wood a "benefit of employment … on the basis of" her military service. 38 U.S.C. § 4311(a). When a wage enhancement exists only because of military service and is triggered solely for employees with qualifying service, withholding that benefit from a veteran who meets the criteria necessarily turns "on the basis of" her service. Reflecting that understanding, the Federal Circuit and MSPB treat claims for military-only benefits as entitlement disputes: the dispositive question is whether the servicemember satisfied the governing statute, rule, or policy—not whether the employer also harbored anti-veteran animus.

Grafting a motive and comparator requirement onto § 4311(a) in the context of military-only benefits would gut USERRA's enforcement scheme and fracture the uniform national protections Congress designed. Employers could evade liability for mis-administering military-only benefits simply by characterizing their decisions as policy interpretation, leaving most such claims non-actionable and preserving the very career disadvantages USERRA was enacted to eliminate. It would also mean that veterans in this

Circuit employed by state entities and private employers would enjoy weaker rights than federal employees, whose claims are governed by Federal Circuit precedent.

Under the proper standard, Ms. Wood's allegations state a straightforward claim under § 4311(a): the Board promised a veteran-only salary enhancement; she met its terms; and the Board denied her the benefit. The district court therefore erred in dismissing her complaint for failure to state a USERRA claim.

## STANDARD OF REVIEW

This Court "review[s] *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (quoting *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)). To survive a motion to dismiss under Rule 12(b)(6), a complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT:
## APPELLANT HAS STATED A USERRA CLAIM

**A. The Board's Veteran-Compensation Policy Is a "Benefit of Employment"**

The Board's veteran-compensation policy—a step-up in salary based on years of military service—is a quintessential "benefit of employment" under USERRA, and the fact that this benefit is available *only* to veterans does not exclude it from USERRA's protections.

**1.** Section 4311(a) provides that a covered servicemember "shall not be denied … *any* benefit of employment by an employer on the basis of" her military service. 38 U.S.C. § 4311(a) (emphasis added). And Congress supplied an expansive statutory definition of "benefit of employment" that expressly includes employer-created monetary benefits like the Board's veteran-compensation policy. Section 4303(2) defines "benefit of employment" to mean:

> the terms, conditions, or privileges of employment, including *any* advantage, profit, privilege, gain, status, account, or interest (*including wages or salary for work performed*) that accrues by reason of an employment contract or agreement *or an employer policy, plan, or practice* and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

*Id.* § 4303(2) (emphasis added).

That definition is sweeping. Congress chose broadly encompassing language—"*any* advantage, profit, privilege, [or] gain"—to describe what qualifies as a "benefit of employment." 38 U.S.C. § 4303(2) (emphasis added). "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). Beyond that, Congress made clear that "wages or salary for work performed" are themselves a protected "interest" within the definition, and that the benefits covered by USERRA may "accrue[] by reason of … an employer policy, plan, or practice," not only by contract or statute. 38 U.S.C. § 4303(2). And the detailed (yet non-exhaustive) list of included benefits that concludes § 4303(2) confirms that Congress expressly intended to protect monetary compensation (alongside other employment advantages).[5]

---

[5] Congress's 2010 amendment to § 4303(2) confirms that wage-related benefits fall within USERRA's protections. As originally enacted, § 4303(2)'s parenthetical provided, "*other than* wages or salary for work performed," which courts had interpreted to exclude wage and salary benefits entirely. Pub. L. No. 103-353, § 2(a), 108 Stat. 3149, 3150 (emphasis added). Congress later struck "other than" and substituted "including," precisely to "make it clear that wage discrimination is not permitted under USERRA." Veterans' Benefits Act of 2010, Pub. L. No. 111-275, § 701(a), 124 Stat. 2887; Joint Explanatory Statement, 156 Cong. Rec. S7656-02 (Sept. 28, 2010). That amendment would be meaningless if employer-created wage enhancements—

Under ordinary principles of statutory interpretation, Congress's express, sweeping definition controls. *See Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 159 (2018) ("When a statute includes an explicit definition, [courts] must follow that definition[.]"). Accordingly, numerous courts have held if an employer adopts a policy or plan that confers higher wages, bonuses, or other financial advantages on eligible employees, those advantages are "benefits of employment" that fall within USERRA's protection. *See, e.g.*, *Belaustegui v. Int'l Longshore & Warehouse Union*, 36 F.4th 919 (2022) (hours-credit seniority benefits); *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102 (9th Cir. 2017) (signing bonus); *Koehler v. PepsiAmericas*, 268 Fed. App'x 396 (6th Cir. 2008) (differential pay); *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544 (8th Cir. 2005) (bonus eligibility).

The Board's veteran-compensation policy fits § 4303(2)'s definition to a tee: it is an "employer policy" or "practice"; it confers an "advantage" and "gain" on the employee in the form of a higher starting salary; and it directly

---

like a veteran's additional salary steps—were somehow excluded from the category of "benefits of employment." The better reading, and the only one consistent with the enacted text, is that such wage enhancements fall squarely within § 4303(2)'s definition.

increases the employee's "salary for work performed." *Id.* § 4303(2). That is a quintessential "benefit of employment" as defined by the statute.

**2.** There is nothing in the text of USERRA—neither in § 4303(2) nor § 4311(a) nor any other provision—that expressly or impliedly excludes a benefit from USERRA's protection if it is available only to veterans.

As explained above, § 4303(2)'s definition of "benefit of employment" is broad and unqualified, with no requirement that a benefit be available to non-veterans. *See supra* Section A.1. And § 4311(a) speaks in similarly sweeping terms. It provides that a covered servicemember "shall not be denied … any benefit of employment by an employer." 38 U.S.C. § 4311(a). That operative command, like § 4303(2)'s definition, is both broad and unqualified. It protects "*any* benefit of employment," and it does so without conditioning that protection on how the employer treats non-servicemembers (or any other comparison class). 38 U.S.C. § 4311(a) (emphasis added). As in § 4303(2), Congress's choice of the word "any" in § 4311(a) confirms that USERRA's protection extends to *every* benefit that falls within the statutory definition, absent some explicit limitation. *See Gonzales*, 520 U.S. at 5. And nothing in § 4311(a) narrows that broad meaning by excluding benefits that an employer chooses to offer only to veterans.

Reading into § 4311(a) an unstated carve-out for "veterans-only" benefits would contradict both the ordinary meaning of "any" and the "fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012)). "[W]hen Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Bostock v. Clayton County*, 590 U.S. 644, 669 (2020). The statutory text provides no basis for treating that wage enhancement as categorically outside USERRA's protection.

The district court below did not meaningfully engage with USERRA's text, but rather adopted the Seventh Circuit's reasoning in *Crews v. City of Mount Vernon*, 567 F.3d 860 (2009). *See* MTD Op. 4–7. But even the Seventh Circuit acknowledged that "[n]othing in the text of either § 4311(a) or § 4303(2) … indicates that § 4311 covers only those benefits extended generally to military and nonmilitary employees alike." 567 F.3d at 866. Instead, the Seventh Circuit invoked § 4311's title—"Discrimination against persons who serve in the uniformed services and acts of reprisal prohibited"—to hold that

"the better interpretation is that the 'benefit of employment' referenced in § 4311(a) is one provided to both military and nonmilitary employees." *Id.*

The Seventh Circuit's analysis is deeply flawed, and the district court erred in adopting it. To begin, it is well-established that "the heading of a section cannot limit the plain meaning of the text." *Bhd. of R.R. Trainmen v. B&O R.R.*, 331 U.S. 519, 528–29 (1947); *see INS v. St. Cyr*, 533 U.S. 289, 308–09 (2001). As explained (and as the Seventh Circuit acknowledged), § 4311(a)'s text broadly encompasses *any* benefit of employment without limitation. That should end the analysis.

But even if § 4311's title were relevant, the concept of "discrimination" does not require a similarly situated comparator. For example, the Supreme Court has held that liability under Title VII—which makes it unlawful "to discriminate against any individual … because of" a protected trait, 42 U.S.C. § 2000e-2(a)(1)—turns on whether that trait was a but-for cause of the adverse action, *even if* the employer treats other groups similarly. *See Bostock*, 590 U.S. at 657–60. The focus is on the reason for the particular decision affecting the particular plaintiff. So too here: § 4311(a) asks whether the individual servicemember was denied "any benefit of employment … on the basis of" her

military service. It does not ask whether some hypothetical non-veteran would have been entitled to the same benefit.

Likewise, § 4311(a)'s use of the phrase "on the basis of" does not impose any comparator requirement. That phrase concerns causation—whether the employer's denial of the benefit is sufficiently connected or related to the employee's military service—an element discussed fully below. *See infra* Section B. But causation has nothing to do with *relative* treatment between groups.[6]

Congress knows how to write comparator-based liability rules when it wants them. The Equal Pay Act of 1963, Pub. L. No. 88-38, 77 Stat. 56, for example, makes it unlawful to discriminate "between employees on the basis of sex by paying wages to employees … at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex … for equal work." 29 U.S.C. § 206(d)(1). Likewise, when Congress amended Title VII in the Pregnancy Discrimination Act of 1978, Pub. L. No. 95-555, 92 Stat. 2076, it required that "women affected by pregnancy, childbirth, or related medical

---

[6] As explained below, when a benefit exists only because of military service, both eligibility and denial turn "on the basis of" that service, satisfying § 4311(a)'s causation requirement. *Infra* Section B. That is a separate question from whether a veteran-only benefit qualifies as a "benefit of employment" under § 4311(a) in the first place.

conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). And in the civilian employee-benefits context, Congress has repeatedly conditioned favorable tax treatment on how an employer treats one class of employees relative to another: numerous nondiscrimination provisions ask whether a plan "discriminate[s] in favor of" defined comparator groups such as "highly compensated employees" or "key employees" with respect to eligibility for, or the type and amount of, benefits. *See, e.g.*, 26 U.S.C. §§ 79(d)(2), 105(h)(2), 129(d), 132(j). Congress included no similar comparator language in § 4311(a).

**3.** USERRA's structure—and the broader system of statutory and regulatory military-only benefits—confirms that Congress expected servicemembers to be able to enforce military-only benefits through § 4311(a).

USERRA's structure assumes that servicemembers will receive advantages that exist precisely because of their military service, and that those advantages will be judicially enforceable. USERRA provides detailed rights to reemployment, seniority, pension accrual, and continued benefits. *See* 38 U.S.C. §§ 4312–18. Many of these rights—reemployment after service,

the "escalator" increase in seniority, continuing pension credit, and special protection from discharge—are, by definition, military-only benefits. And Congress provided that these military-only benefits would be enforceable via USERRA's judicial and administrative enforcement provisions—the same enforcement mechanisms available for § 4311 claims. *See* 38 U.S.C. §§ 4323–24. Simply put, judicial enforcement of military-only benefits is a cornerstone of USERRA's other protections. So, interpreting § 4311(a) also to protect military-only benefits is fully consistent with the statutory scheme.

Beyond USERRA, the broader federal statutory landscape underscores that Congress expects servicemembers to enjoy enforceable, military-only employment advantages. For federal civilian employees, Congress has enacted multiple provisions in Title 5 that confer benefits solely because an employee serves in the uniformed services. For example, paid military leave under 5 U.S.C. § 6323(a) gives qualifying federal employees up to fifteen workdays per fiscal year of fully paid leave for active duty, inactive duty training, or full-time National Guard duty. Likewise, reservist differential pay under 5 U.S.C. § 5538 entitles eligible federal employees who are called to qualifying active duty to a payment equal to the amount by which their projected civilian basic pay exceeds their military pay and allowances,

ensuring they do not experience a pay cut because of a call to active duty. These are quintessential military-only "advantages, profit[s], [and] gain[s]" in wages and salary. 38 U.S.C. § 4303(2).

Title 5 provisions like § 6323 and § 5538 contain no bespoke enforcement mechanisms. Instead, for decades, service members have invoked USERRA's judicial and administrative remedies when those military-only entitlements are denied—specifically through § 4311(a)'s prohibition on denying "any benefit of employment" on account of military service. Thus, in a long line of cases, the Merit Systems Protection Board and the Federal Circuit have treated these statutory entitlements as "benefit[s] of employment" protected by USERRA that can be enforced using USERRA's enforcement mechanisms. *See, e.g.*, *Butterbaugh v. Dep't of Justice*; 336 F.3d 1332, 1338–40 (Fed. Cir. 2003); *Adams v. Dep't of Homeland Sec.*, 3 F.4th 1375 (2021), *abrogated on other grounds by Feliciano v. Dep't of Transp.*, 605 U.S. 38 (2025); *Collins v. Dep't of Agric.*, 104 M.S.P.R. 76, 78–79 (M.S.P.B. 2006); *Santiago v. Dep't of Veterans Affs.*, No. DC-4324-20-0796-I-1, 2023 WL 5250208, at *1 (M.S.P.B. Aug. 15, 2023). And just last term, the Supreme Court construed the scope of § 5538 in a case arising out of a servicemember's § 4311(a) claim, thus implicitly endorsing the premise that military-only

benefits claims can be pursued under § 4311(a). *See Feliciano v. Dep't of Transp.*, 605 U.S. 38 (2025); *Feliciano v. Dep't of Transp.*, No. AT-4324-18-0287-I-4, 2021 WL 4033810 (M.S.P.B. Sept. 6, 2021) (noting that employee's § 5538 claim was brought under § 4311(a)).[7]

Similarly, when the executive branch adopts military-only benefit policies in the form of "agency rules, regulations, procedures, and negotiated collective bargaining agreements," those policies qualify as "benefit[s] of employment" under § 4311(a). *Welshans v. USPS*, 107 M.S.P.R. 110, 113 (M.S.P.B. 2007), *aff'd*, 550 F.3d 1100 (Fed. Cir. 2008) (paid military leave under USPS rule). And the MSPB has long held that USERRA supplies the

---

[7] If Congress believed that military-only benefits like those in § 5538 and § 6323 should *not* be enforced under USERRA (or should be enforced through a different mechanism), it had numerous occasions to amend these statutes in the past three decades. Instead, Congress has consistently increased military-only benefits under these laws *without* limiting servicemembers' ability to enforce them through § 4311(a) claims. *See, e.g.*, John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232, div. A, tit. VI, § 605, 132 Stat. 1795 (2018) (amending § 5538 to cover reservists called or ordered to active duty under 10 U.S.C. § 12304b); Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, div. A, tit. XI, §§ 1109, 1114(a), (b)(1), 138 Stat. 2089, 2091 (2024) (amending § 6323 to increase leave and extend benefits to Space Force members). That matters because "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Philip C. v. Jefferson Cnty. Bd. of Educ.*, 701 F.3d 691, 696–97 (11th Cir. 2012) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)).

enforcement mechanism when "the agency [has] improperly administered" such benefits "under its own rules." *Id.* (citing cases); *see Pratt v. Dep't of Transp.*, 103 M.S.P.R. 111, 114–15 (2006) (paid military leave under Department of Transportation rule); *cf. Davison v. Dep't of Veterans Affs.*, 115 M.S.P.R. 640, 645–46 (2011) (paid military leave under Executive Order 5396).

Shelby County's veteran-compensation policy fits seamlessly into this statutory design. Like paid military leave under § 6323, differential pay under § 5538, or a host of other military-only benefits adopted by the executive branch, the Board's policy creates a wage advantage that exists only because an employee has served in the uniformed services. Once the Board chose to confer that benefit, it became a "benefit of employment" within § 4303(2), and § 4311(a) forbids the Board from denying that benefit to a qualifying veteran "on the basis of" her service. 38 U.S.C. §§ 4303(2), 4311(a). Considering USERRA's text, structure, and the broader context of statutory and regulatory military benefits, the statute is best understood to do exactly what it has long done for federal employees' military-only benefits: provide a cause of action to enforce the employer's "policy, plan, or practice." *Id.* § 4303(2).

To hold that USERRA does not reach military-only benefits would mean that Congress crafted a comprehensive statutory scheme aimed at protecting

military benefits in which vital categories of military-only benefits (*e.g.*, differential pay, paid military leave) cannot be enforced at all. It would also permit employers to deny benefits to veterans who served in certain branches of the military (Army vs. Navy), in certain roles (combat vs. non-combat), or in certain conflicts (Gulf War vs. Global War on Terror). Nothing in the USERRA's text, structure, purpose, or history supports that absurd result.

    **5.** USERRA unambiguously encompasses military-only benefits. But if there were any doubt, the "pro-veteran canon" would dispel it. *Rudisill v. McDonough*, 601 U.S. 294, 314 (2024); *see Travers v. Fed. Express Corp.*, 8 F.4th 198, 208 n.25 (3d Cir. 2021) ("[A]ny interpretive doubt is construed in favor of the service member, under the pro-veteran canon."). "The Supreme Court has long admonished courts to construe statutes protecting veterans liberally for the benefit of the veteran." *Myrick v. City of Hoover*, 69 F.4th 1309, 1318 (11th Cir. 2023) (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). And this Court has repeatedly recognized that "Congress adopted this rule of construction when it enacted USERRA." *Id.* (citing *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 429 (9th Cir. 2023)); *see also Pucilowski v. DOJ*, 498 F. 3d 1341, 1344 (Fed. Cir. 2007) ("[T]he term 'benefit of employment' is given an 'expansive interpretation.'" (quoting *Yates*

*v. MSPB*, 145 F.3d 1480, 1484–85 (Fed. Cir. 1998))). "Thus, when two plausible interpretations of USERRA exist—one denying benefits, the other protecting the veteran—[courts] must choose the interpretation that protects the veteran." *Myrick*, 69 F.4th at 1318.

The Court does not need to rely on the pro-veteran canon to hold that USERRA protects "*any* benefit of employment"—including military-only benefits. 38 U.S.C. § 4311(a) (emphasis added). But, to the extent the statute's text leaves any question, the Court "must choose the interpretation that protects the veteran." *Id.*

## B. Denial of a Veteran-Only Benefit to a Qualifying Veteran Is a Denial "on the Basis of" Military Service

The Board denied Ms. Wood a "benefit of employment … on the basis of" her military service when it refused to credit Ms. Wood's years of military service under its policy.

**1.** Section 4311(a) provides that a servicemember "shall not be denied … any benefit of employment by an employer *on the basis of*" her military "membership," "service," or "obligation for service." 38 U.S.C. § 4311(a) (emphasis added). And Section 4311(c) provides that an employer "shall be considered to have engaged in actions prohibited under subsection (a)" when the employee's protected military status "is a motivating factor in the

employer's action, unless the employer can prove that the action would have been taken in the absence of such … service." *Id.* § 4311(c)(1). In enacting that provision, Congress specifically intended to codify a pro-veteran "but for" causation standard—*i.e.*, to make it easier, not harder, to prove § 4311(a) claims. *See Gummo v. Village of Depew*, 75 F.3d 98, 104–05 (2d Cir. 1996) (recounting history). Under that "sweeping standard," *Bostock*, 590 U.S. at 656, the statute's causation requirement is satisfied if military service is a necessary factual condition underlying the denial of a benefit. *See id.* ("[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.").

When the benefit at issue exists *only* because of military service both eligibility for, and denial of, that benefit necessarily turn "on the basis of" the veteran's military service, and causation is established. Here, the Board's policy is defined by reference to the veteran's military service: it is triggered only for employees, like Ms. Wood, who have qualifying service and is meaningless for employees who lack it. By refusing to credit Ms. Wood's years of military service under its policy, the Board has taken an adverse action that is "on the basis of" Ms. Wood's military service. "[C]hange [that] one thing," and "the outcome changes." *Bostock*, 590 U.S. at 656. Had Ms. Wood not

served, she would not be within the scope of the policy; had the Board credited her military service under its policy, she would have received the benefit. That is precisely the kind of but-for, status-based causation that "on the basis of" captures: *But for* the Board's refusal to credit Ms. Wood's military service, she would have received the benefit.[8]

Nothing in § 4311's text or structure requires plaintiffs additionally to prove that the employer acted with a discriminatory motive or anti-veteran animus. Section 4311(a) simply requires a causal connection between the denial of the benefit and military service. And § 4311(c) clarifies specific

---

[8] By analogy, suppose an employer has a written policy that it will furnish sign-language interpreters for deaf employees at all mandatory trainings. In practice, it routinely provides interpreters, but when one deaf employee requests an interpreter for a critical training, the employer refuses, invoking budget pressures or internal confusion, even as it continues accommodating other deaf employees. The only reason that employee has any entitlement to an interpreter is her disability status; were she not deaf, there would be no right to ask for an interpreter and no denial of the benefit. If we "change one thing at a time," *Bostock*, 590 U.S. at 656, and remove that disability—treating her as hearing while holding every other fact constant—the dispute evaporates: there is no accommodation request, no broken promise, and no injury. Her disability is thus a necessary factual condition of both the entitlement and the denial, and the refusal to accommodate is naturally understood to be "on the basis of" disability, even if the employer professes no hostility toward disabled employees and even if other motivations played a role. Ms. Wood's claim is structured the same way: her qualifying military service both triggers the Board's veteran-only benefit and makes the Board's refusal to honor that benefit injurious, so that denial is "on the basis of" her service in the same but-for sense.

circumstances when an employer "shall be considered to have engaged in actions prohibited under subsection (a)." Critically, neither provision requires that an employer act with specific intent (or any other mental state)—an element Congress knows how to include when it wants. USERRA itself provides for liquidated (*i.e.*, double) damages in cases where an "employer *knowingly* failed to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(D) (emphasis added); *cf., e.g.*, 42 U.S.C. § 1981a (authorizing compensatory and punitive damages in cases of "intentional discrimination").[9] Adding an intent requirement to § 4311(a) would be inconsistent with the familiar rule that courts do not "read[] words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997); *see Bostock*, 590 U.S. at 699. And it would be irreconcilable with the pro-veteran cannon, under which this Court must choose the more veteran-protecting interpretation of USERRA. *See Myrick*, 69 F.4th at 1318; *supra* Section A.5. Section 4311 requires simple but-for causation and nothing more.

---

[9] If every § 4311(a) claim required pleading intentional discrimination, then every violation of § 4311(a) would necessarily be "knowing[]" under § 4323(d)(1)(D) and thus give rise to liquidated damages. But that is not how the courts or the MSPB have ever interpreted these provisions to interact. *See, e.g.*, *Koehler*, 268 Fed. App'x 396.

**2.** Accordingly, federal courts (including, most importantly, the Federal Circuit), as well as the MSPB, have long recognized that when a veteran alleges that she was denied a military-only benefit, the question is not whether the employer acted with a discriminatory motive or anti-veteran animus; the question is whether the employee was denied a military-only benefit for which she was eligible under the employer's policy.

The Federal Circuit, which has exclusive jurisdiction to review USERRA claims brought by federal employees, has stated this proposition most clearly. In *Butterbaugh v. Department of Justice*, federal employees claimed that their agency violated USERRA by miscalculating paid military leave under 5 U.S.C. § 6323(a)—a military-only benefit. 336 F.3d 1332, 1334–36 (Fed. Cir. 2003). The Federal Circuit agreed with the MSPB that, unlike a typical § 4311(a) case, "the question … is not whether Petitioners' military status was a substantial or motivating factor in the agency's action, for agencies only grant military leave to employees who are also military reservists." *Id.* at 1336. Instead, the issue was "the correct interpretation of 5 U.S.C. § 6323(a)(1)" because reservists "cannot claim they were denied a benefit of employment if the Department granted them the full measure of leave due to them under section 6323(a)(1)." *Id.* In other words, because the

benefit at issue was a military-only benefit, the § 4311(a) inquiry collapsed into a pure entitlement question under the governing leave statute.

The Federal Circuit's more recent decision, in *Adams v. Department of Homeland Security*, 3 F.4th 1375 (2021), crystallizes this point. In *Adams*, a federal employee and National Guard member brought a USERRA claim alleging that his agency unlawfully denied him differential pay under 5 U.S.C. § 5538 and 10 U.S.C. § 101(a)(13)(B). *See* 3 F.4th at 1377–78. The court explained that "when the benefit in question is only available to members of the military, claimants do not need to show that their service was a substantial or motivating factor" in the denial. *Id.* Because differential pay is a military-only benefit, the court concluded that the MSPB erred by requiring a showing of discriminatory motive. *Id.* Instead, the claimant "was only required to show that he was denied a benefit of employment" for which he was eligible. *Id.* at 1378. The balance of the opinion thus turned entirely on whether the claimant met the statutory eligibility criteria for differential pay under § 5538 and 10 U.S.C. § 101(a)(13)(B), not on any civilian comparator or separate evidence of discriminatory motive or animus.

The Supreme Court subsequently took up the eligibility question presented in *Adams* in a different case, ruling in favor of the veteran claimant.

*See Feliciano*, 605 U.S. at 55–56 (abrogating *Adams*). Implicit in the Supreme Court's decision is the premise that military-only benefits like differential pay are cognizable under USERRA without evidence of discriminatory motive. *See Feliciano*, 2021 WL 4033810, *1. Under the district court's theory below, however, the Supreme Court never should have reached the eligibility question, because a suit seeking a military-only statutory benefit with no civilian comparator and no allegation of discriminatory motive would not state a § 4311(a) claim in the first place.

Other courts of appeals have taken a similar approach to the Federal Circuit in cases involving private employers. In *Belaustegui v. International Longshore & Warehouse Union*, 36 F.4th 919 (9th Cir. 2022), a longshoreman sued his private-sector union and employer association under USERRA after a labor committee, applying a collectively bargained "USERRA policy," denied him military-leave "hours credits" and a promotion to "Class B status" that he would have achieved but for his years of service. The district court granted summary judgment for the defendants, holding that the longshoreman's § 4311(a) claim failed because the hours-credit scheme was available "just to servicemembers." 36 F.4th at 925–26. The Ninth Circuit rejected that premise as "mistaken," explaining that the hours credits and

promotion are "benefits of employment" under § 4303(2) because they accrue by reason of an employer policy and confer "status" and "gain," regardless of whether they are "available only to servicemembers." *Id.* at 926–28. In so holding, the Ninth Circuit expressly disagreed with and distinguished the Seventh Circuit's decision in *Crews*, 567 F3d 860, and its progeny. *See* 36 F.4th at 926–29. And, importantly, the Ninth Circuit did not additionally require the plaintiff to prove discriminatory motive or anti-veteran animus.

Similarly, in *Koehler v. PepsiAmericas*, Pepsi (a private employer) had adopted a voluntary "Military Active Leave Policy" promising differential pay to employees "who are called to active service," *i.e.*, a benefit available only to military employees. 268 Fed. App'x 396, 399 (6th Cir. 2008). After a bench trial, the district court held that this differential pay was a "benefit of employment" under USERRA and that Pepsi was liable under § 4311(a) because it had denied that military-only benefit to an eligible employee. No. 1:04-cv-742, 2006 WL 2035650, at *4–5 (S.D. Ohio July 18, 2006). The court acknowledged that an employer is not obligated to pay wages during active service under USERRA, but "[i]f the employer adopts such a policy, USERRA protects the employee's rights under that policy." *Id.* Critically, the court came to that conclusion without any separate inquiry into discriminatory motive, animus,

or civilian comparators. *Id.* On appeal, Pepsi did not challenge its USERRA liability, and the Sixth Circuit "accept[ed]" the district court's conclusion that Pepsi's voluntary policy was a benefit protected by USERRA and that Pepsi had violated USERRA by denying that benefit to an eligible employee (regardless of motive). *See* 268 Fed. App'x at 403.[10]

These judicial decisions are also consistent with decades of decisions by the MSPB, which has held that a federal employee proves a § 4311(a) claim by showing that the federal government (as employer) failed to honor a military-only benefit to which the employee was entitled under the applicable statute, rule, order, or policy without needing to additionally prove discriminatory motive. *See, e.g.*, *Collins*, 104 M.S.P.R. at 78–79 (paid military leave under § 6323); *Santiago*, 2023 WL 5250208, at *1 (differential pay under § 5538); *Welshans,* 107 M.S.P.R. at 113 (paid military leave under USPS rule); *Pratt*, 103 M.S.P.R. at 114–15 (paid military leave under Department of Transportation rule); *Davison*, 115 M.S.P.R. at 645–46 (paid military leave under Executive Order 5396).

---

[10] The USERRA issue presented on appeal was whether Pepsi had *knowingly* violated USERRA, entitling the employee to liquidated damages under 38 U.S.C. § 4323(d)(1)(D).

This precedent establishes a coherent scheme: When a benefit exists only because of military service—including statutory benefits (like differential pay under § 5538 and paid military leave under § 6323), executive branch rules and policies (like paid military leave under USPS's internal rules or Executive Order 5396), and private-sector employer policies (like Pepsi's differential pay policy)—the denial of that benefit to an eligible servicemember is "on the basis of" military service. In those cases, but-for causation is satisfied because eligibility for, and denial of, a military-only benefit necessarily turn on the employee's military service. So, the § 4311(a) inquiry reduces to whether the veteran satisfies the substantive eligibility criteria set by the relevant statute, regulation, or employer policy.

**3.** Requiring claimants to allege discriminatory motive or anti-veteran animus in military-only benefits claims would render those benefits unenforceable and would be inconsistent with USERRA's purpose "to encourage service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a)(1). Military-only benefits—such as paid military leave, differential pay, and veteran-only wage enhancements—are not mere "perk[s]," as the district court characterized them. MTD Op. at 7. They are the

principal tools Congress and employers have chosen to reduce the disadvantages that often follow from military service. For example, the Board's policy of taking military experience into account when setting employees' salaries reflects the fact that those who serve in the military often start their careers later than those who do not.

Yet in the ordinary case, the denial of military-only benefits turns on an administrative or legal determination (for example, how to count days of military leave or what constitutes qualifying service), not on individualized animus toward a particular veteran. Requiring plaintiffs to plead and prove a separate, subjective discriminatory motive in this context would therefore extinguish most military-only-benefit claims at the threshold: The employer could always say it was simply "interpreting the statute" or "following policy," and there would rarely be direct or circumstantial evidence of hostility beyond the denial of the benefit itself. That result is the opposite of what Congress prescribed in USERRA: it would preserve, rather than "eliminat[e] or minimiz[e]," disadvantages to civilian careers that flow directly from uncompensated or under-compensated military service, and would convert USERRA's broad, status-based protection for "any benefit of employment" into a narrow, motive-based tort remedy. 38 U.S.C. §§ 4301(a)(1), 4311(a).

**4.** Adopting the district court's approach would also deepen a split of authorities among the circuits. *Compare Adams*, 3 F.4th 1375; *Belaustegui*, 36 F.4th 919, *with Crews*, 567 F3d 860. And, by splitting with the Federal Circuit, this Court would produce unequal treatment of veterans within the Eleventh Circuit based solely on the identity of their employer. As noted above, Congress routed USERRA claims against the federal government through the MSPB, with exclusive judicial review in the Federal Circuit. *See* 38 U.S.C. § 4324(d)(1); 5 U.S.C. § 7703(b)(1)(A); 28 U.S.C. § 1295(a)(9). That means that the Federal Circuit sets nationwide USERRA precedent governing the federal government, which is the single largest employer of veterans in the Nation by far. If this Court added a motive requirement for non-federal employers, a federal employee in Alabama could enforce a military-only benefit, while an otherwise identical veteran working for a state government or a school district or private company could not. The Court should not adopt an interpretation of the statute that creates such an irrational disparity.

**5.** Finally, if there were any question about whether USERRA protects military-only benefits regardless of discriminatory motive, the pro-veteran canon would require this Court to side with the Federal Circuit and the Ninth Circuit and choose the more veteran-protective interpretation. *See Myrick*, 69

F.4th at 1318; *see supra* Section A.5.

*     *     *

Applying the proper legal standard, Ms. Wood has stated a § 4311(a) claim. Her complaint alleges that the Board's veteran-compensation policy promised veterans a step up in salary based on years of prior military service, Compl. ¶¶ 13–15, which is a textbook "benefit of employment" under § 4303(2). The complaint further alleges that Ms. Wood met the policy's criteria and was nevertheless denied that promised benefit because the Board refused to recognize her military service. Compl. ¶¶ 13–21. She was thus denied a "benefit of employment … on the basis of" that service. 38 U.S.C. § 4311(a). The district court therefore erred in dismissing her complaint for failure to state a USERRA claim.

**CONCLUSION**

The Court should reverse the decision below.

Respectfully Submitted,

Stephen K. Wirth
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
(301) 615-2336
stephen@jacobsonlawyersgroup.com

December 3, 2025

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the foregoing document contains 8,206 words and complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century font.

Dated: December 3, 2025                 */s/ Stephen K. Wirth*
                                               Stephen K. Wirth

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2025, I caused the foregoing document to be electronically filed using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 3, 2025                    /s/ Stephen K. Wirth
                                           Stephen K. Wirth